RECEIVED

AUG 26 2009
LEONARD GREEN, Clerk

United States Court of Appeals For The Sixth Circuit

09-4081

Eric WALKER-Appellant

V

State of Ohio - Appellee

FROM A ORDER OR Judgment
CASE Number 1:08CV01011 In
The United States District
Court, Northern District of Ohio
dated - 7-20-2009

## Notice of Appellant Brief

Eric WALKER-Appellant
WARREN CORRECTIONAL Institution
5787 State Route 63 (P.O. Box 120)
Lebanon, Ohio 45036
Appellant PRO SE


Richard CORDRAY - Ohio Attorney General

Stephanie L. WATSON - Assistant Attorney General
150 EAST GAY Street 16th Floor
Columbus, Ohio 43215-3130
Telephone (614) 644-7233
FAX (614) 728-9327
Counsel For Appellee-Respondent

Case: 09-4081    Document 17    Filed: 09/02/2009    Page: 1

Case: 09-4081    Document: 17    Filed: 09/02/2009    Page: 2

United States Court Of Appeals For The Sixth Circuit

ERIC WALKER - Appellant

District Court Number 1:08 CV1011

CASE Number

V

State OF OHIO - Appellee

Appellant's Brief

ERIC WALKER - Appellant

WARREN Correctional Institution

5787 State Route 63 (P.O. Box 120)

Lebanon OHio 45036

Appellant Pro Se

Richard CoRdRAy - OHio Attorney GeneRal

Stephanie L. WATSON - Assistant Attorney General

150 East Gay Street 16th Floor

Columbus, OHio 43215 - 3130

Telephone (614) 644 - 7233

FAX (614) 728 - 9327

Counsel FoR Appellee - Respondent.

# Table Of Contents

Pages = ( )

Transcript page = (TR.)

Table of Authorities

Jurisdictional Statement - In order to provide
A meanful Review of what is essentially A mixed
Question of law and facts, This united states court
of Appeals For The sixth circuit has jurisdiction over
timely Appeals which are exercised within Ten days
to entay of the united states District Court Northern
District of Ohio's Habeas Corpus 2254(d) decision
filed on July 20, 2009, case Number 1:08 CV 1011. (A Federal question).

statement of issues presented
statement of case                                              (1)
statement of facts                                             (3)
Summary of the Argument                                        (11)

Conclusion                                                     (30)

Proof of Service                                               (30)

Appendix

# Table of Contents

() = Page #

## Rules and Constitutional Provisions; Statutes

| | |
|---|---|
| Code of Professional Responsibility Canon one | (28) |
| Code of Professional Responsibility canon five | (11,17). |
| Federal Constitution 5th Amendment | (17, |
| Federal Constitution 6th Amendment | (11,13,17,26). |
| Federal Constitution 14th Amendment | (11,25,27). |
| Ohio Appellate Practice App R. 12 (A)(2) | (19). |
| Ohio Appellate Practice App R. 16 (A)(7). | (19). |
| Ohio Revised Code section 2901.22 | (21). |
| Ohio Revised Code section 2907.02 (D) | (27). |
| Ohio Revised Code section 2909.19 (B)(1)(2)(c) | (22). |
| Ohio Revised Code section 2929.41 (A) | (22). |
| Ohio Rules of Professional Conduct Rule 1.1 | (19). |
| Ohio Rules of Professional conduct Rule 8.3 | (12). |
| Ohio Rules of Professional Conduct Rule 8.4 | (13). |
| United States 6th Constitution Amendment Compulsory clause | (11,26). |
| United States 6th Constitution Amendment Confrontation clause | (11,26). |
| United States 6th Constitution Amendment Note 2283 | (11,13,17,26). |
| United States 8th Constitution Amendment Cruel and unusal Punishment clause | (11,26,27). |
| United States 10th Constitution Amendment section(10) Article (i) | (21). |
| United States 14th Constitution Amendment section (i). Due Process clause | (11,25,27) |
| United States 14th Constitution Amendment section(i) Equal Protection clause | (11,25,27) |
| United States 28th U.S.C. section 2244(d) | (18) |
| United States 28th U.S.C. section 2253(c)(3) | (18) |

Case:09-4081   Document:17   Filed: 09/02/2009   Page:4

# Table of Contents

## Statement of Issues Presented

Whether the ineffective Representation and assistance of trial counsel Thomas F Shaughnessy, whereby his lack of investigation into conceded lack of medical evidence, lying to court And his performance during trial prejudice Eric Walker.

Whether the ineffective Representation and assistance of ~~trial~~ (Appellate) counsel for Eric Walker during his appeal to the 8th appellant district court of appeals was bias and prejudicial, and deficiency of court rules/time factors and lack of prepare-ness limited standards to issues presented.

Whether the Discrimination in jury selection caused harm to Eric Walker and the uncharged allegations of Ohio Revised Code section 2921.03 Intimid-ation by several jurors from appellant did prejudice Eric Walker.

Whether Prosecutorial Misconduct Results as Carol Skutnik's suppress-ion of Medical Evidence (court ordered Blood test Results) violated Ohio Rules of criminal Procedure CRIM.R.16 (B) and (F) discovery and inspection prejudice Eric Walker and result in a unfair trial.

Whether district court properly dismissed habeas corpus petition as untimely, and whether Eric Walker was entitled to equitable tolling of statute of limitations for habeas petition was broad enough to encompass Eric Walker's claim that "actual innocence gateway was available to petitioner to overcome untimeliness of petition 28 USC section 2244(d) and section 2253 (c)(3).

Table Of Contents                    Page = ( )
Proposition Of Law


Proposition of Law Number one: The ineffective

Representation And Assistance of Trial counsel violated App

-ellant's 6th U.S. Constitution Amendment Note 2283. Also

to include 14th U.S. Constitution Amendment, Section one

due Process And Equal Protection,     (11,13,17,26).


Proposition of Law Number two: The ineffective Represent

-ation And Assistance of Appellant counsel, violated Appellant

6th U.S. Constitution Amendment Note 2283, Also to include

14th U.S. Constitution Section one due Process And Equal Protection    (11,13,17,26)


Proposition of Law Number three: Discrimination in Jury

Selection And Jury Misconduct violated Appellant's 6th U.S. Constitut

-ion Amendment Compulsory And Confrontation clause And violation of

7 U.S. Constitution Amendment concerning Jury.


Prop of Law Number four: Suppression of Medical Evidence    (16,27).

by prosecutor violated Crim R. 16(B) And (f) discovery And inspection

therefore violating Appellant's U.S. 14th Constitution Amendment section

one, Due Process And Equal Protection.


Prop of Law Number five: District court violated            (18)

petitioner Right to habeas corpus petition 14th U.S.

Constitution Amendment section one, Due Process And

Equal Protection, Also in violation of 28 U.S.C. section 2254(d)

28 USC. Section 2244 (d) And section 2253 (c)(3).

# Table of Authorities

| CASES | PAGES ( ) |
|---|---|
| Aquino v Prudential Life 419 F.2d. 259. | (24, 25). |
| Bovie v South Carolina (1964) 378 U.S. 347, -356. | (21, 24). |
| Brady v Maryland 373 U.S. 83, 83 S.Ct. 1194. | (18). |
| Carriger v Stewart (1977) 132 F.3d. 468, 476, (9th Cir.). | (18). |
| Concord Twp. trustees v Hazelwood Builders (2001) Lake App. No. 2000-L-040. | (19). |
| Devine v New Mexico Dept. of corrections (C.A. 10 1989) 866 F.2d. 339 -345. | (24). |
| Fisher v Gibson (2002) 282 F.3d. 1283 -1309. (10th Cir.). | (17, 18). |
| Heak v Humphrey (1994) 512 U.S. 477, 114 S.Ct. 2364. | (18). |
| Holsomback v White (1998) 133 F.3d. 1382 -1385-89. (11th Cir.). | (15). |
| House v Bell 547 U.S. 536-37, 126 S.Ct. 2076. | (26). |
| Jamison v Collins (2002) 291 F.3d. 380. (6th Cir.) | |
| Lindsey v Washington (1937) 301 U.S. 397, -401. | (21). |
| Majoy v Roe (2002) 296 F.3d. 970. (9th Cir). | (18). |
| Miller v Florida, 482 U.S. 423, -429. | (21). |
| Murray v Carrier 477 U.S. 496, 106 S.Ct. 2649. | (24). |
| Preiser v Rodriquez 411 U.S. 475-500, 93 S.Ct. 1827, 36 L.Ed. 2d.439. | (18). |
| Rogers v Tennessee (2001) 532 U.S. 451 -456. | (21, 24). |
| San Antonio Independent school District v Demetrio P. Rodriquez cite as 93 S.Ct. - -1278 (1973) | (24, 25). |
| State v Comer (2003) 99 Ohio St. 3d. 2003 -Ohio-4165. | (22). |
| State v Edmonson (1999) 86 Ohio St. 3d. 324, -329. | (22). |
| State v Foster (2006) -Ohio-856, 845 N.E. 2d. 470 | (20). |
| State v Jenks, 61 Ohio St.3d. 259. | (16). |
| State v Martin (1983) 20 Ohio App. 3d. 172. | (16). |
| State v Thompkins, 78 Ohio St. 3d. 380, -390. | (16). |

# Table of Authorities
## Rules and Statutes and Constitutional Provisions

| | Pages ( ) |
|---|---|
| Code of Professional Responsibility Canon one | (28) |
| Code of Professional Responsibility Canon five | (11, 17,). |
| Federal Constitution 5th Amendment | (17). |
| Federal Constitution 6th Amendment | (11,13,17,26). |
| Federal Constitution 14th Amendment | (11,25,27). |
| Ohio Appellate Practice App.R.12(A)(2). | (19). |
| Ohio Appellate Practice App.R.16(A)(7). | (19). |
| Ohio Revised Code Section 2901.22 | (21). |
| Ohio Revised Code Section 2907.02(D) | (27). |
| Ohio Revised code section 2929.19(B)(1)(2)(c) | (22). |
| Ohio Revised code section 2929.41(A) | (22). |
| Ohio Rules of Professional Conduct Rule 1.1 | (19). |
| Ohio Rules of Professional Conduct Rule 8.3 | (12). |
| Ohio Rules of Professional Conduct Rule 8.4 | (13). |
| United States 6th Constitution Amendment Compulsory clause | (11,26). |
| United States 6th Constitution Amendment Confrontation clause | (11,26). |
| United States 6th Constitution Amendment note 2283 | (11,13,17,26). |
| United States 8th Constitution Amendment Cruel and unusual Punishment clause | (11,26,27 |
| United States 10th Constitution Amendment section (10) Article (1) | (21). |
| United States 14th Constitution Amendment section (1) Due Process clause | (11,25,27 |
| United States 14th Constitution Amendment section (1) Equal Protection clause | (11,25,27 |
| United States 28th U.S.C. section 2244(d) | (18). |
| United States 28th U.S.C. section 2253(c)(3) | (18). |

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 8

# STATEMENT OF THE CASE

A Cuyahoga County Grand Jury returned a thirty-one count indictment in case number CR 455849 against Defendant-Appellant Eric Walker, hereinafter "Appellant." Counts 1 and 2 were for Rape (R.C. 2907.02) with firearm specifications against Erica Hasan. Counts 3 and 4 were for Kidnapping (R.C. 2905.01) with firearm specifications against Erica Hasan. Counts 5, 6, and 7 were for Rape (R.C. 2907.02) with firearm specifications against Erica Hasan. Counts 8, 9, 10 were for Gross Sexual Imposition (R.C. 2907.05) against Erica Hasan. Counts 11, 12 and 13 were for Kidnapping (R.C. 2905.01). Counts 15, 16, 26, and 29 were for Rape (R.C. 2907.02) with firearm specifications against Erica and/or Tatiana Hasan. Count 17 was for Gross Sexual Imposition (R.C. 2907.05) against Erica Hasan. Counts 18, 28, and 30 were for Kidnapping (R.C. 2905.01) with firearm specifications against Erica and/or Tatiana Hasan. Count 19 was for Attempted Rape (R.C. 2923.02/2907.02) against Tatiana Hasan. Counts 20, 21, 22, and 27 were for Gross Sexual Imposition (R.C. 2907.05) against Tatiana Hasan. Count 23 was for Rape (R.C. 2907.02) against Tatiana Hasan. Counts 24 and 25 were for Kidnapping (R.C. 2905.01) against Tatiana Hasan. Count 31 was for Having Weapon While Under Disability (R.C. 2923.13) which was tried to the Court and not the jury.

At the close of its case, the State moved to dismiss the firearm specifications as relates to counts 5, 6, 7, 11, 12, 13, and 14 and dismissed counts 8, 9, 10 and 14 in their entirety.

Case: 09-4081    Document: 17    Filed: 09/02/2009    Page: 9

The trial was held and after the State rested, the defense moved for acquittal, which the court denied.

The jury then found Appellant guilty of the remaining counts and the Court found Appellant guilty of Having Weapon While Under Disability.

At the sentencing hearing, the State dismissed the Sexual Violent Predator specifications which were bifurcated before trial and Appellant stipulated to the Sexual Predator classification.

The court found that Appellant had previously served a prison term. The court sentenced Appellant to 3 years for the firearm specifications prior and consecutive to a life sentence on counts one and two; 3 years for the firearm specifications prior and consecutive to 9 years on the base charge of counts 3, 4, 15, 16, 18, 26, 28, 29, and 30; 9 years on each of counts 5, 6, 7, 11, 12, 13, 23, 24 and 25; 17 months on each of counts 17, 20, 21, 22 and 27; 7 years on count 19, and 4 years on count 31. The firearm specifications were ordered to be consecutively for a 9 year total. Counts 1 and 2 are consecutive to each other and consecutive to firearm specifications. Counts 3 and 4 are concurrent with each other and concurrent to counts 1 and 2. Counts 5, 6, and 7 are consecutive to each other. Counts 11, 12 and 13 are concurrent with each other. Counts 15, 16, 17, and 18 are concurrent with each other. Counts 19, 20, 21, 22, 23, 24 and 25 are concurrent with each other. All base charges of the counts are consecutive to each other.

Appellant filed his notice of appeal. Appellant now seeks to have his convictions and sentence reversed.

Case: 09-4081     Document: 17     Filed: 09/02/2009     Page: 11

## STATEMENT OF THE FACTS

Khadija Hasan testified that she is 36 years old and married to Appellant (T. 363).
Khadija married Appellant in March of 1990, but stopped living with him in June of 1990
(T. 364). Khadija has six children (T. 365). Appellant is the father of Erica, whose date
of birth, 1-21-90 (T. 365-366). Tatiana, whose date of birth is 3-27-91 is also one of
Khadija's daughters (T. 365-366). Khadija testified that Erica would have visitation with
Appellant (T. 366-367). Khadija testified that Appellant lived at 1919 East 55th and
Chester (T. 367). Khadija dropped off Erica and Tatiana at Appellant's place on the
weekend of July 9, 2004 (T. 369). Erica had never expressed to Khadija about anything
odd or unusual happening at Appellant's home up until this point (T. 368). Before then,
Tatiana had never been to Appellant's apartment (T. 369). Khadija said Appellant's
apartment was small for one person (T. 371). Tatiana was not living with Khadija during
this time, but was staying with Khadija for summer vacation (T. 370). Tatiana was living
with her grandmother during the school year (T. 370). Tatiana called Khadija on Sunday
to get picked up (T. 372). Khadija testified that there was nothing odd or unusual about
her two daughters' appearance or demeanor at that time (T. 372). The daughters did not
discuss anything that had occurred over the weekend (T. 372). Khadija testified that
Tatiana approached her on July 16, 2004, and was very emotional and crying (T. 372).
Khadija got Erica and the three of them had a conversation (T. 374-375). Khadija
testified that Erica was also crying (T. 375). Khadija testified that she had a 45 minute
conversation with her daughters and then called Appellant, who denied doing anything to
her daughters (T. 376-377). Khadija testified that she called the police, had her daughters

interviewed by somebody from Children and Family Services, and took her daughters to the Alpha Clinic at MetroHealth (T. 378).

On cross-examination, Khadija admitted that she had prior dealings with both the Cuyahoga County and the Stark County Department of Human Services (T. 381). Previously, there had been housing issues with the children (T. 381). There had also been drug addiction issues (T. 381). Khadija admitted that Tatiana was put out of another home due to her behavior (T. 383). Khadija admitted that her daughters had ran away and that things were out of control (T. 385-386). Khadija admitted to being angry at her daughters about their behavior (T. 388). Tatiana did not return to the home until the next day as she was gone throughout the night (T. 387). The next day was when she dropped the girls off at Appellant's (T. 387). Khadija testified that it was Erica's idea to take Tatiana with her to Appellant's (T. 387).

Erica Hasan testified that her date of birth is January 21, 1990 (T. 393). Appellant is her father (T. 393). Erica testified that she is in the ninth grade (T. 394). Erica lives with her mother (T. 394). Erica testified she would go and stay with Appellant on some weekends at his apartment (T. 396-397). It was a small apartment, with one main room and a kitchen and a bathroom (T. 397). Erica testified that the first time that Appellant inappropriately touched her was November of 2002 (T. 398). Erica testified that Appellant touched her breast while they were sleeping in the same bed (T. 300-401). Erica testified that Appellant put his fingers inside of her vagina (T. 403). Erica testified that Appellant put his penis inside her vagina and ejaculated (T. 404-405). Erica testified that Appellant pulled his gun out and told her that he would kill her if she told anybody (T. 405).

Case: 09-4081     Document: 17     Filed: 09/02/2009     Page: 13

Erica admitted that when she went back to her mother's house, she did not tell her anything about what happened (T. 408). Erica testified that Appellant touched her about five more times when she went to Appellant's home (T. 410). Erica testified that he had intercourse with her again (T. 411). Erica testified that Appellant did not threaten her with a gun, but hit her in the chin (T. 414-415). Erica testified that she did not know why she decided to go back to Appellant's home (T. 416). Erica testified that her sister Tatiana went with her on July the 16th to his home, and her mother brought them there (T. 418-419). Erica testified that when they arrived two females and one of their daughters were there sitting on couches (T. 420). The daughter was 12 years old (T. 420). Erica testified that the daughter slept on one couch, and the two women slept on two pillows (T. 421). Erica testified that she and her sister slept with Appellant in the bed on Friday night (T. 421). Erica testified that nothing happened that night (T. 421). Erica testified that on Saturday night, nothing happened (T. 422). Erica testified that on Sunday, the women and the daughter left (T. 423). Erica testified that she wouldn't have sex with him, so he choked her and punched her (T. 425). Erica testified that Appellant got Tatiana from the shower and laid her on the bed (T. 425). Erica testified that Appellant was touching Tatiana's breasts and fingering Erica, and the knife was sitting next to her (T. 426). Erica testified that Appellant put his mouth on Tatiana's breast and had his fingers in Erica's vagina (T. 427). Erica testified that Appellant was wearing a condom, and tried to put his penis inside her, but ejaculated before that (T. 427-428). Erica testified Appellant told her to go take a shower and get dressed (T. 428). Erica testified that when she came out of the shower, Appellant had the gun pointed at Tatiana (T. 430). Erica identified a gun in court (T. 430). Erica testified that Appellant pointed the gun to

Case: 09-4081     Document: 17     Filed: 09/02/2009     Page: 14

her head and threatened her (T. 432). Erica testified that two police officers came to the apartment and said that someone had called and told the police that two 17 year old girls were up here getting raped (T. 433). Erica testified that she said no and told the police that nothing happened (T. 434). Erica testified that her sister told their mom a week after it happened (T. 438).

On cross-examination, Erica testified they lived in Miracle Village, which is a rehabilitation center for people who have done drugs (T. 445). Erica testified that Appellant hit her like a professional boxer would on her face and body more than five times (T. 450). Erica admitted to doing marijuana (T. 452-453). Erica admitted that she and Tatiana ran away from home before she went to Appellant's home in July (T. 453-454). She admitted that she want to go to Janet Dixon's, her mother's stepmother's house (T. 455). However, Erica was not permitted to go there because of her behavior (T. 455). Erica had behavior problems which included staying out too late (T. 455). Her mother called a social worker about her behavior (T. 456-457). The social worker tried to talk to Erica about her behavior and tried to mediate between her and her mom (T. 458). However, there were still problems (T. 458). Erica testified that Appellant hit her in the face; specifically, her chin area and her jaw and she fell over some furniture (T. 460).

Erica testified that there was an incident in 2002 between her and her mother and she ran away (T. 464). Erica stayed with Appellant for five months after that (T. 464). Erica testified that she had a lot of swelling from Appellant punching her, and could see in the mirror that she was swollen (T. 471). Erica did not show anybody that she was swollen (T. 471).

Case: 09-4081    Document: 17    Filed: 09/02/2009    Page: 15

Tatiana Hasan testified that her date of birth is March 27, 1991, and she is 14 years old and just finished eighth grade (T. 480). Tatiana lives with her mother and five sisters (T. 481). Before that, Tatiana lived with her grandmother (T. 482). Tatiana testified that she and Erica decided to stay at Appellant's house on July 9th (T. 483). Tatiana had never stayed there before, but had previously met Appellant (T. 484). Tatiana testified that her mother dropped them off on Friday, July 9, 2004 (T. 485). Tatiana testified Appellant's apartment was small (T. 486). On Friday night, two other ladies and one of their daughters slept on the living room (T. 486). Tatiana testified she slept in bed with Erica and Appellant (T. 487). Tatiana testified that Appellant woke her up at about 3 a.m. and tried to make her have oral sex with him (T. 488). Tatiana testified that she tried to wake Erica up, but could not (T. 489). Tatiana testified that on Saturday morning, "and it was like 11 o'clock in the morning," that Appellant put his two fingers into her vagina (T. 492). Tatiana testified Erica was asleep (T. 492). Tatiana testified prior to that, he touched her breast (T. 493). Tatiana testified that she did not tell her sister about this (T. 496). Tatiana testified that on Saturday night the two women and the little girl were in the apartment again (T. 497). Tatiana testified that during the night, Appellant woke her up and was feeling her on top of her clothes (T. 498). Tatiana testified that Erica was sleeping (T. 500). Tatiana testified that Sunday, July 11th, she called her mother to come get her (T. 500). Tatiana testified that she got in the shower, heard dishes rambling, and heard a bump (T. 500). Tatiana testified that Appellant came into the bathroom and told her not to come out until he told her to come out and she saw Erica on the bed crying with no pants on (T. 501). Tatiana testified that Appellant told her to open her legs, which she did after he put a knife to her (T. 501). Tatiana testified

Case: 09-4081     Document: 17     Filed: 09/02/2009     Page: 16

that Appellant put his mouth on her vagina (T. 501-502). Tatiana testified that Appellant had a condom and put his penis inside her and Erica (T. 501-501). Tatiana testified that Appellant told her never to tell or that he would kill her (T. 504). Tatiana testified that Appellant also threatened her with a gun (T. 505). Tatiana testified that Appellant had kicked out the two women and the little girl earlier that Sunday morning (T. 505). Tatiana testified that the police arrived and came inside the apartment and asked if anyone was having sex (T. 506). Tatiana testified that she told the police no. (T. 506). When Tatiana was away from Appellant's apartment and in the car with her mother, she did not tell her mother what happened (T. 507). Tatiana testified that she did not tell her then because she was scared but told her on Friday, July 16th (T. 508). Tatiana testified that she was examined by a doctor (T. 511-512). Tatiana identified a gun and knife in court (T. 512).

Tatiana testified that a day-and-a-half or two before she went to Appellant's house, her mom had to call the Department of Human Services about her and Erica (T. 519). Tatiana had run away a day or two before, and did not come home all night (T. 519). Tatiana admitted that she was having a problem with her mom (T. 519). Tatiana admitted that she had a "mis-agreement" with her mom because she and Erica could not get out of town (T. 521). Tatiana wanted to get out of town to Canton to Miss Dixon's house (T. 521). Tatiana testified that Miss Dixon indicated that they could not come over because of their behavior (T. 521). That was the disagreement that caused her mom to call up a hot line and get a social worker over there because the situation was so intense that her mom might actually hurt her (T. 524). Tatiana testified that she spoke harshly and rudely to her mom (T. 525). Tatiana admitted that when she was at Appellant's

Case: 09-4081    Document: 17    Filed: 09/02/2009    Page: 17

house and they went to the store and the park, there were people around (T. 530-531). She was there all day (T. 532).

CMHA police officer Ronald Hopkins testified that he was on duty with Officer Flippen when they received an assignment to respond to Appellant's apartment at 6:19 p.m. on July 11, 2004 (T. 539,556). Officer Hopkins testified they spoke to two young ladies in the lobby who made the complaint (T. 540). The ladies made an allegation of the father possibility having sex with his daughter (T. 541). The ladies were upset that Appellant put them out (T. 557). Officer Hopkins entered his apartment and spoke with Appellant, his daughter and another female (T. 543). Officer Hopkins asked Appellant and the females if there were problems or any touching or fondling and they said no (T. 546). Officer Hopkins testified that he was at the apartment for 15 to 20 minutes (T. 558). The two young ladies in the apartment indicated that nothing was wrong (T. 562).

CMHA Detective Burdyshaw testified that he participated in the execution of a search warrant on July 29, 2004 at 1919 East 55th Street, apartment 1005 (T. 576-577). Appellant was present when the search warrant was executed (T. 577). Detective Burdyshaw testified that a firearm and a knife were recovered (T. 583-584).

Latisha Padgett testified she is 27 years old and has a partner by the name of LaShawn Wallace (T. 595). Ms. Padgett testified in 2004 she was staying in a homeless shelter with her partner (T. 597). Ms. Padgett testified that she had a phone conversation with Appellant about her being in a shelter and he allowed them to stay at his apartment (T. 599). Ms. Padgett testified that she and her partner slept in the living room and Appellant slept in the bedroom (T. 600). Ms. Padgett testified that she stayed at Appellant's apartment for approximately two weeks (T. 601). Ms. Padgett found out that

Appellant's daughter was coming to spend the weekend, so she had her 12 year old daughter stay there also (T. 602). Ms. Padgett knew that Appellant was not supposed to have other tenants living there (T. 603). Ms. Padgett testified there she had a disagreement with Appellant on Sunday morning so she left with her partner and daughter (T. 606-607). Ms. Padgett testified her partner, LaShawn Wallace, called CMHA police (T. 607).

Dr. David Solomon Bar-Shain testified that he is a general pediatrician at MetroHealth Medical Center (T. 622). Dr. Bar-Shain testified he is the Associate Director of the Alpha Clinic, where they examine children who may have been sexually abused (T. 623). Dr. Bar-Shain testified that he examined Tatiana Hasan and Erica Hasan on September 29, 2004 (T. 627-628, 631). Dr. Bar-Shain testified that he interviewed both of them and then examined them (T. 633). Dr. Bar-Shain testified that his examination of Erica did not indicate any evidence of trauma (T. 640). Dr. Bar-Shain testified that his examination of Tatiana was normal, except she had pain and he could not complete the exam (T. 642).

Rickeea Padgett testified that she is 12 years old and has finished fifth grade (T. 661-662). Latisha Padgett is her mother. Rickeea testified that she stayed at Appellant's apartment with her mom and LaShawn (T. 665-666). Two girls came there after (T. 667). Rickeea testified she slept on the couch and she woke up and saw the man on top of a girl moving up and down (T. 672). Rickeea testified she woke her mom and LaShawn up (T. 675).

Cleveland police Sex Crimes Detective Alan Strickler testified that he obtained a search warrant for Appellant's residence (T. 691). Detective Strickler testified that a gun and knife were found (T. 696, 697).

Before Analyzing the merits of Appellant's (claim), it is Appro
-priate to emphasize two limits on the scope of the quest
-ion presented. First, there is no challenge that Appellant's trial
counsel Thomas E. Shaughnessy, And appellate 8th district Appeals
court counsel Thomas E. Rein, lack the skill or knowledge to Ade
-quately pursue Appellant Rights.

                    The obligation of a lawyer to
exercise professional judgment solely on behalf of the client
Requires that he disregard the desires of others that might
impair his free judgment. complaint included Adequate Allegations
of "Conduct under color" of state law, And may include violations of
U.S. Constitution Amendments (6th)(5th)(8th) And (14th) guarantees stan
-ing Alone As for example denial of Representation And effective Assistance of counsel,
cruel And unusual Punishment clause, And procedural due process and equal protection.
In Code of Professional Responsibility Ethical considerations E.C. 5-52, Desires of
third person, Influence of third parties on Attorneys. A lawyer subjected to
outside pressures (counsel's law Practice was Right Across the street
from a elementary school And the businessmen and women, churchs, communi
-ty leaders And Residents knew of And heard of the Allegations through
television, newspapers, And word of mouth where counsel sacrifice
the loss or destruction of (Appellant's case) for no cause. Counsel
caters (supply what is wanted) his law Practice to Alot of that
community and outside pressure or influences could have Affected his
judgment and/or decision making As Representation of client with 31 serious
charges. Ineffective Assistance of counsel is not limited to omissions of
counsel, it Also extends to cases in which counsel actively undermines
his client's own defense As shown in complaint docket 21 And 22
filed in District court Along with subsequent grievances of Counsel

CASE #
080215-02

Filed 09/02/2009   Page: 20   Document: 17   Case: 09-4081

ERIC WALKER V. THOMAS E. SHAUGHNESSY

BAR Association 1301 East Ninth Street Cleveland, Ohio 44114-1250, Cleveland Ohio Phone (216) 696-3525 - FAX (216) 696-2413 dated MARCH 11, 2008, February 14, 2008 - FROM Ohio State BAR Association RE: Grievance Against Thomas E. Shaughnessy. (Phone 614) 487-2050, FAX (614) 487-1008 Dated March 25, 2008, The Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, 65 South Front Street 5th Floor Columbus, Ohio 43215-3431 Phone (614) 387-9370 (888) 664-8345, and FAX: (614) 387-9379. And the Disciplinary Counsel, The Supreme Court of Ohio Dated April 14, 2008, 250 civic center Drive Suite 325 Columbus, Ohio 43215-7411 Phone (614) 461-0256, FAX (614) 461-7205, 1-800-589-5256. File Number A8-0861A. In spite of trial counsel's omissions during this process, [drinking of Alcohol and being drunk during trial, his lying about a court appointed private investigator (All instances in complaint)] actively undermines his client's own defense. Appellant counsel Thomas Rein (see Respondent's Exhibit 9) coming to the court of Appeals from a judgment of conviction on July 29, 2005 and Filed in the clerk's office on August 8, 2005, Requested that court to grant a delayed Appeal filed JANUARY 24, 2006 Almost one hundred sixty six days later, And as it becomes his Responsibility on Appeal to research the transcripts of Record and all trial proceedings, including motions to the court, if the state supplied all legitimate material to trial counsel and whether counsel effectively argued or allowed the state of Ohio to conduct both its case and the defense. Appellant counsel's duty is to establish the strongest issues for the viewing Appeal court to consider should've included ineffective Assistance of counsel, Jury Misconduct and tampering Along with Ohio Rules of Professional Conduct Rule 8.3 Reporting Professional Misconduct (a) A lawyer who possesses unprivileged Knowledge of a

violation of the Ohio Rules of Professional Conduct that Raises a que-
-tion as to any lawyer's honesty, trustworthiness, or fitness as
a lawyer in other Respects shall inform a disciplinary Authorit-
empowered (which was not done) to investigate or act upon
such Aviolation, proving further prejudice to Appellant fore one
of his own E.S.Q. Appellant counsel discrimination Against petiti-
-er to make a difference in treatment (As one strong Reason wh-
that 8th district Appeals court denied counsel's Request to Represent my
Appeal to the Ohio supreme Court) on the basis of other indivi-
-dual merit in Refusing to Acknowledge the direct Appeal time
frame and counsel's lack of Research that showed proven ineffe-
-ive Assistance of trial counsel where Appellant had nothing but
the Reputation of counsel in front of the jury to consider. In my
claim many of these factors played a vital Role (Motion claim of [Docket 21]
Actual Innocence Filed and denial of effective Assistance of trial
and appellant counsel, on April 22, 2009 in the district court) with th-
tribunal organized to convict, as a denial of 6th u.s. constitutio-
Amendment note 2283. As trial counsel fail to Argue key points
of differences and discrepancy, in testimony of alleged victim
and state witnesses, to investigate Blood test Results, Alibi wit-
- nesses, medical Doctors Reports thoroughly, because of the
seriousness of these charges Required much thought, or work,
And a need for the Record to Reflect strong Representation by
Appellant counsel despite a preference for Avoiding something.
Ohio Rules of Professional Conduct Rule 8.4 Misconduct. It is professi-
-al misconduct for a lawyer to do any of the following (A) violate or Att-
-empt to violate the Ohio Rules of Professional Conduct, knowingly
Assist, or induce Another, to do so, or do so through Acts of Another

The state failed to establish that ERIC WALKER was guilty of the crimes of which he was convicted. First, there is no cred-ible evidence that Appellant engaged in the Acts of Rape, Atte-mpted Rape, Gross Sexual Imposition or Kidnapping. In fact, the witness' testimony is so incredible on so many facets that the credibility of that testimony is insufficient to sustai a conviction as a matter of law. It is clear that the alleged vic-tims have been having serious problems with their mother. Khadija Hasan had prior dealings with both the ~~cou~~ Cuyahoga County and the Stark County Department of Human Services There had been housing issues and drug addiction issues. Tatiana was put out of another home due to her behavior. Erica at age 14 had a history of using Marijuana. Erica had previously run away and had a history of running away as did Tatiana. Tatiana at age 13 stayed out all night before Khadija dropped her and Erica off at Appellant's home. Erica had similar problems which included staying out too late. A social worker became involved but the problems continued.

What is also quite telling is that the girls wanted to go to Janet Dixon's home, but were not permitted. The situation gets so bad that Khadija has to call a hot line so that she does not hurt the girls. It appears that these females were quite manipulative in their behavior in doing or saying what the needed to get their way. The police are called while the girl are at Appellant's apartment. The girls are specifically asked by the police about molestation by Appellant. They both deny that there was any wrong doing or that they had been touched or assaul-ed by Appellant. Erica claimed that Appellant beat her like a

professional boxer would, including to her face. The police do no
testify about this. No one else verifies or corroborates this
during this time or at any time previous to this. The girls go
out to the store and the park but tell no one what happened.
Rickeea Padgett testified when she awoke and saw a man on top of
a girl, she woke her mom and Lashawn Wallace up, but neither
of the women call police until actually one day and a half later/or
after Tatiana and Rickeea claims. Khadija picks up the girls,
neither one tells of any wrongdoing, nor do they complain of
any physical ailments. Is this in the least bit credible given
the alleged trauma and horror they claim that they had just
gone through? Not until later after they have time (7 days later)
to come up with this story do they decide to talk to their
Mother. Any testimony from Ms Padgett and her daughter can easily
be discounted, especially in light of the fact that Appellant had put
them out of his home. There is no physical evidence to corrob
-orate the stories of the alleged victims. The lack of credibility
of all the testimony as a whole and the lack of evidence makes
the convictions Insufficient to stand as a matter of law. As in
Holsomback v White, 133 F.3d. 1382-1385-89 (11Cir. 1998) petitioner petition
-ed pro se for federal writ of habeas corpus. The United States
District court for the northern District of Alabama No CV-94-
PT 3137-s Robert B. Propst. Judge dismissed petition, petitioner appealed.
The court of Appeals, Barkett, Circuit Judge, held that: (1) trial
counsel's decision not to conduct any investigation into conceded
lack of medical evidence of sexual abuse was not reasonable and
(2) counsel's failure to conduct adequate pretrial investigation
into lack of medical evidence prejudiced defendant. Reversed

- And Remanded with instructions. [ The doctor in this case stated that it was "medically impossible" for repeated acts of abuse to have occurred without physical signs of abuse. see State v Martin (1983) 20 Ohio App. 3d. 192, State v Jenks, 61 Ohio St. 3d. 259, And State v Thompkins 78, Ohio St. 3d 380.-390.

In docket 21, and 22, A complaint filed against trial counsel Thomas Shaugnessy and Data from U.S. Department of commerce, national weather service local climatological Data that discredit Allegations that Erica Hasan said sexual abuse and rapes begin. She states from the question ask through direct examination (question how do you remember the date the rapes begin? (TR. 398-399) Erica states she remembers because it was cold on November 1, 2002. (52) fifty two days before winter began and the charts show warm to mild temperatures in a three month cycle. (This is (42) forty two days into the Autumn season). Erica Also states she'd never forget, yet she can't remember what she had on (clothes). In docket 23 included Motion to present new evidence, medical Report from Metro Health Medical Center 2500 Metro Health Drive Cleveland Ohio 44109 test result positive of this virus, whereas Erica Hasan would've had to had these same virus over the twenty months of Allegations. Also docket 28 contain medical facts from the American Red Cross Blood Services, Northern Ohio Region Cleveland, Ohio 44115, I ask the District Court in a motion docket 26 to order Respondent to Release petitioner Eric Walker's Medical Reports to the court to prove the court order Blood Results in 2004, and 2005, which Eric Walker had virus, Red cross reports show positive in August 8, 2001, and my request to prove even now Eric Walker still has said virus. Erica nor Tatiana had this virus which frees me from guilt or blame yet I've yet to Receive A clear hearing or Review of these issues And to include at length these instances of bolstered cross examination of Doctor's testimony (TR. 658-659) (Rickera Padgett TR. 676), (TR 592-593, Detective Burdyshaw) AND (TR. 613-619, Latischia Padgett). In open court (TR. 514-515 (TR. 644-646), TR 658-659)

Case: 09-4081     Document: 17     Filed: 09/02/2009     Page: 24

Trial counsel states to court, Jury, that he would indicate on the record that he reviewed the written statements of the witness who's currently on the stand, and he do not find any material inconsistencies. (These being statements of both Alleged victims In) Fisher v Gibson 282 F.3d. 1283-1309 (10th Cir. 2002) CRIM LAW 641.13(6) where An Attorney Accidentally brings out testimony that is damaging because he has failed to prepare, his conduct can not be called a strategic choice. CRIM LAW 641.13 (21) Implying A client's guilt by Repeatedly lending support to the state's version of events is virtually Equal to a concession of guilt and constitutes a failure to oppose the state's case with Reasonable diligence and therefore violates counsel's duty of loyalty to his client. A violation of 6th and 5th u.s. constitution Amendment of effective assistance of counsel. [ It's the lawyer's Responsibility to test that credibility] to a favorable ruling or objection by the state. Reversal of his conviction on the grounds of denial of effective Representation and Assistance of counsel, 6th u.s. constitution Amendment note 2283, Public Defender's Are held to the same standards of competence And integrity As private lawyers As Regards this Amendment's Right to effective assistance of counsel. An accused is entitled to no less protection by reason of the fact that his counsel is Retained Rather then court appointed. Question #1 If the state failed to present sufficient Evidence to sustain A conviction against Eric Walker and the burden of proof Rested on the state's case, then who is lacking sufficient knowledge, content, skill, or ability if the verdict is returned guilty, whereby defense counsel failure to summon witnesses who would provide solid evidence of perjury, counsel's lack of investigation into solid evidence and poor performance. Answer-- Surely trial counsel, who above all, not being legally qualified to handle A case of this magnitude = size or extent, Requiring much thought and work. Code of Professional Responsibility canon (5) Ethical considerations E.C 5-1, Loyalty to client, the professional judgment of a lawyer should be exercised within the bounds of the law solely for the benefit of his client. The District court did not entertain the new evidence before or Docket 26, or 28.

SCREENING test Results, And a information booklet on Hepatitis C virus, its transmissions to others to fully establish all the facts of Eric Walke 's claim that trial counsel neglected. Also to include a motion for a court orde of docket 26. Appellant has presented new evidence which might cast doubt on counsel's failure to effectively Represent. And to show his failure to investigate. Under Brady v Maryland 373, US.83,83 s. Ct. 1194,10 L.Ed. 2d. 215(1963) purpose is established by showing that the favor -able evidence could Reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Fisher v Gibson -282 F.3d.1283-1309(10th Cir 2000) Defense counsel failed to adequately investigate, failed through apparent ineptitude to act as an reasonably diligent and professional advocate, failed through his hostility to his clients interest (opening argument one page(Tr.359-60 And his apparent sympathy and assistance for the state's case(open argument TR.347-358 In Heak 512 u.s. 477,114 s.ct. 2364. Holding: The court of appeals, Brunetti, circuit judge held that Heak did not preclude section 1983 action seeking to compel state to release certain biological evidence. Reversed and remanded see Preiser v Rodriquez 411 u.s. 475-500, 93 s.ct. 1827, 36 L.Ed. 2d. 439,( -1973) Carriger v Stewart 132 F.3d.468-476,(9th Cir.1997) And Majoy v Roe 296 F.3d.970(9th Cir.2002) determine whether that claim was jurisd -ctionally barred. Certificate of appealability granted on issues of whether district court properly dismissed habeas petition as untimely. And whether petitioner was entitled to equitable tolling of statute of limitations for federal / state habeas petition was broad enough to encompass petitioner claim that "Actual innocence (docket 21) gateway was available to petitioner to overcome untimeliness of petition 28 u.s.c. section 2244d, And section 2253 (c) (3).

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 26

In Ohio Rules of Professional conduct Rule 1.1. Competence - A lawyer sha[ll] provide competent Representation to client. In (Respondent's Exhibit 12) Appellant counsel Thomas Rein #0041571, 526 Superior Avenue, Cleveland, Ohio 44114, Brief filed in the 8th district court of Appeals for Eric Walker, May, 30, 2006. Almost 130 days After counsel filed APPEAL (Respondent Exhibit 9) for a delay in January 27, 2006, still 116 days After judgment from (Exhibit 6) the Common Pleas court August 8, 2005, As A matter of Record Appellant counsel was (290 day) in preparing a brief where in Assignments of ERROR III The trial court ERRED when it sentenced Appellant to prison on counts 11, 12, 13, (Kidnapping) when it did not Instruct the jury As to A victim or Dates As to Those counts. (see TR. 788). In his brief, however, Appellant (counsel) fails to cite to Any legal Authority to suppor[t] his contentions. In (Respondent's Exhibit 14, Court of Appeals of Ohio) jour -Al Entry and opinion [Case number 87677] third Assignment of error, An Appellate court may disregard An Assignment of ERROR pursuant to App. R. 12(A)(2) if An Appellant fails to cite to Any legal Authority in support of An Argument as required by App. R. 16(A)(7). Accordingly, As An Appellant "bears the burden of Affirmatively demonstrating error on Appe[al] "this court must overrule Appellant's third Assignment of ERROR pursu -ant to App. R. 12(A)(2). Concord Twp. Trustees v Hazelwood Builders (Marc[h] - 23, 2001 (Lake App. No. 2000-L-040.

Appellant counsel's Assignment of ERROR IV: The trial court ERRED By ordering Appellant to serve A consecutive sentence without First considering A concurrent sentence And By making Findings not supported By The Record. The trial court ERRED when it ordered tha[t] the sentences to be served consecutively to one Another And all of the firearm specifications (see Brief page 19) (on the murder counts) The trial court

did not make the appropriate finding to justify a consecutive sentence and based its decision on conclusions not supported by the evidence without first considering whether a concurrent sentence would be appropriate. [ Page 23 paragraph two and three, reads in part, of course, since this brief is being filed and submitted after the recent ohio supreme court decision in State v Foster, 2006-Ohio-856, the application of that case will be addressed here as well. (Remembering this conviction was journalize August 8, 2005). First, Appellant submits that the law and the statutory scheme as it existed at the time of this incident and sentence should apply to Appellant's case here.

Additionally, this Court is precluded by the Due Process clause from applying Foster's remedy, which dispenses of the need for trial judges to make findings to exceed minimum and concurrent terms of imprisonment, to defendants such as Appellant whose criminal conduct pre-dated the release of Foster. [. Here the court of appeal base its findings on counsel: (290 days of disregard to the rules of court and prejudice Appellant while counsel was aware of an obvious substantial risk to safety. "Counsel had actual knowledge of potential danger". The fact -finder may conclude that from the very facts. The criminal law generally permits a finding of recklessness when a person disregards a risk of harm of which he is aware.

In Respondent's Exhibit 14, Court of Appeals of Ohio, Fourth Assignment of Error opinion -in part, Appellant recognizes State v Foster, 109 Ohio St. 3d.1, 2006-Ohio-856, 845 N.E. 2d 470, which was decided after he filed his notice of appeal, but before he filed his Appellate brief. Appellant, however, maintains that Foster is inapplicable to him

because it violates his rights against expost facto legislation and his due process rights. We find Appellant's argument without merit and apply Foster to this case.

In the instant matter, the trial court relied on unconstitutional provisions when it imposed Appellant's consecutive sentences. Thus, Appellate's sentences are void. (But because of counsel being late to submit brief the sentencing scheme before Foster was not availible as the court vacated his sentences and remand the case to the trial court for Resentencing in accordance with Foster. Appellant's fourth assignment of error is sustained.

Ohio Revised Code section 2901.22 negligence [ A act played by trial and Appellant counsel upon ERIC WALKER proving denial of effective assistance and representation of counsels] The Ex Post Facto Clause of Article 1 section 10 of the United States Constitution prohibits, among other things, any legislation that "changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed (Also please note Appellant received more time at the Resentencing hearing under the Foster decision) Miller v Florida 482 u.s. 422, 423, 429, quoting Calder v Bull (1798), 3 Dall, 386, 390. Lindsey v Washington (1937), 301 u.s. 39' - 401, Regardless of whether the change "technically" increased the punishment for the crime, the legislative enactment falls within the ex post facto prohibition if it; 1) is Retrospective; and 2) disadvantages the offender affected by it. Miller, 482 u.s. at 430-32. Rogers v. Tennessee (2001) 532 u.s. 451, 456. and Bouie v South Carolina (1964), 378 u.s. 347, 356.

Appellate counsel placed ERIC WALKER's position in Review of Appeal in a very bad light due to (counsel's late filing of brief

A normal standard of review of the appeal was not available in determin
-ing Appellant's rights, and sentencing guidelines that predated the
Foster Remedy. This loss due to prejudice and/or incompetence
placed a higher burden on ERIC WALKER whereby the court had guidel
-ines that ERIC WALKER could appeal from in the sentencing scheme
because his case which changes and arrest came on July 29, 2004
And well predated the new Rules of law. [Example R.C. 2929.41 (A)
A sentencing court has the discretion, however to impose consecutive
punishments if, and only if, it sets forth statutorily required
findings and reasons in support thereof. (Pre Foster) R.C. 2929.19
-(B)(1)(2)(c). In State v Edmonson (1999), 86 Ohio St. 3d. 324-329,
(Reversing imposition of Maximum sentence because "there is not
confirmation that the court first considered imposing the minimum
And then decided to depart. There is nothing in the record that
the trial court first considered a concurrent sentence. Therefore
A consecutive sentence is not appropriate. (Accordingly Appellant would
have, and should have been granted these same privilege awarded
My counterpart also whose crimes predate Foster, but unlike my counsel
Thomas Rein, my counterpart's counsel files a timely notice of appeal
And brief to Emphasize a desire to follow court Rule and present the
legal Authorities, in issues presented for review). The findings in this
case are not supported by the record to justify a consecutive
sentence in this case. [ Had Appellant counsel Thomas Rein done his job
efficiently these issues would have been Reviewed pre Foster by the
(8th) Appellant District court of Appeals. Where is fact trial was held June
13, 2005 And sentencing on or About July 29, 2005, showing 6th u.s. constitution
Amendment note 2288, Ineffective Representation and Assistance of Appellate
Counsel. Additionally See State v Comer (2003) 99 Ohio St. 3d. 2003-ohio-4165

1 Did the District court incorrectly decide the facts? yes.

First in Procedural History Respondent claim A timely Appeal (First) (untimely) from Eric Walker's conviction And sentence, when As fact (see Respondent -s Exhibit 9) proving A untimely Appeal (And this costly error) showing A Delayed Appeal filed on January 24, 2006 by Appellant counsel Thomas Rein from the conviction file with the clerk of court from the Cuyahoga court Common Pleas court judgment August 8, 2005. Almost (160) one Hundred sixty days plus, showing bias and prejudice by Appellant counsel which Resul -ed first in a unfavorable Review of issues presented to the Eight Appe -Ant District court of Appeals who Rendered a judgment that was Received by Eric Walker on December 11, 2006. In a letter that counsel sent Along with the courts decision stated that he filed A motion in this case number 87677, to this same 8ᵗʰ Dista. Appeals court to Represent Eric Walker's Brief in support of jurisdiction to the Ohio Supreme court As A Appeal of Right delayed Any Action while motion was being Reviewed And decision forwarded to me. (Later in) this brief (has) shall state Reason Number two why the Appeal court denied the motion with facts but Reason Number one lied with this untimely Delayed Appeal] I being unskilled had no choice but to wait in hopes that legal Representati would being Any constitutional question to a broader light, and this wait and when I Received his Response left me with About two weeks for A direct Appeal. (see Respondent Exhibit 16) This one hundred sixty days where counsel was late, Resulted in the Also denial of counsel's motion Respectively. From August 2006 thur January 23, 2007, Eric Walker was in 4B. Administrative isolate where barely Rational can't satisfy nor meet the Requirements that Rights to legal services may suggest

Case: 09-4081    Document: 17    Filed: 09/02/2009    Page: 31

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 32

include, or invoke as a necessary step or result [in seeing a legal staff representive and/or getting legal material or advise] I saw a staff person down at Southern Ohio Correctional Facility on time be it one or two days before my time limit to appeal expire in the six months. Ohio Adm. Code 5120-9-20. Now with one staff person over-seeing 44 Ranges being 880 Inmates in Admin. isolation local control, protective control, and security control and shall be afforded the same access to legal materials as those in general population i for all practical purposes incapable of being or of occurring, which does constitute "cause and prejudice." see San Antonio Independ -ent School District V Demetrio P. Rodriquez cite as 93 S.Ct. 127 (1973) Constitutional law 48(1,6) Test of strict judicial scrutiny of states law is reserved for cases involving laws which operate to disadvantage of suspect classes or interfere with exercise of fundamental rights and liberties explicitly or implicitly protected by the constitution. see Devine v New Mexico Dept. of Corrections (C.A. 10 1989) 866 F.2d. 339-344-45, Rogers V Tennessee (2001) 532 u.s. 451,456, Also see Bouie V South Carolina (1964), 378 u.s. 347, 356. Also Murray v Carrier 477 u.s. 496, 106 s.ct. 2649.

Secondly, Eric Walker claim of lack of legal knowledge which is present both in his state memorandum and as cause. A prisoner's pro se status and ignorance of his rights do consti -utes cause, and lack of legal training is sufficient to estab -ish cause and prejudice. Aquino V Prudential Life 419 F.2d. 259. Federal Civil Procedure (657.5(1) pro se submission should should be held to less stringent standards than formal pleading drafted by lawyers. R.E. Aquino v Prudential Life, Federal Civil Proc (2)

(657.5(1) District courts should read the pleadings of a pro-se plaintiff liberally and interpret them to raise the strongest arguement that they suggest. In San Antonio Independent school District v Demetrio R. Rodreguez cite as 93 s.ct. 1278 (1973) Crim Law 1208(1) while sentencing judges may in imposing fines consider defendant's ability to pay, in such circumstances they are guided by sound judicial discretion rather then by constitutional mandate based on due process and Equal protection theories. (14th) U.S. Constitution Amendment section (1) one. Constitutional law (211) At least where wealth is involved equal protection clause of the 14th Amendment does not require absolute equality or precisely equal advanta -ges U.S. 14th Constitution Amendment. All person born or naturalized in the united states and subject to the jurisdiction thereof are citizens of the united states and of the state wherein they reside. No state shall make or enforce any laws which shall abridge the privileges or immunities of citizens of the united states, nor shall any state deprieve any person of life, liberty, or property without due process of law nor deny to any person within its jurisdiction the equal protection of the law.

Do you feel there are other reasons why the District courts judgment was wrong? yes, in its review of Actual Innocence, where a clear issue of fundamental miscarriage of justice may have occured through a combination of new evidence Blood test Results, complaints to leading Legal Authorities. Medical Reports from Doctor's, and Evidence in which (docket 9) the district court denied because lack of service (whereby I sent all the Reports to the county Prosecutor's office instead of the Attorney General's office! I Just didn't Know

Case: 09-4081    Document: 17    Filed: 09/02/2009    Page: 34

At the time it the case was at a different level of government, and alot of that material and this new evidence some seen before the District Court closed this case but that which came after (as I stated I had no clue the case was close until almost (30) thirty day later) but all of it is evidence in the District Court and none of it was reviewed all at once on the merits of Actual Innocence and (Ineffective) assistance of trial counsel and appellant counsel constituting a 6th U.S. Constitution Amendment violation, Jury Misconduct a 7th U.S. Constitution Amendment and the (8th) Eighth Amendment's Cruel and Unusual Punishment Clause to establish free from guilt claim and it is More likely than not no reasonable juror would have found Eric Walker guilty beyond a reasonable doubt House v Bell 547 U.S. at 536-37, 126 S.Ct. At 2076-2077.

What action do you want the Court to take in this case?
In light of Eric Walker's demonstration of cause and prejudice to excuse the procedural default and establishing Actual Innocence. Accordingly petitioner has also demonstrated that he is in custody pursuant to a judgment of the state court which Resulted in a

decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States Accordingly those convictions should be Reversed and vacated, or to grant a writ of Applicability or any other Appropriate relief as provided.

What specific issues do you wish to Raise on Appeal?
First off, A 6th Amendment U.S.C.A. denial of both trial

And Appellant counsel's effective Representation And Assistance, including also through violations of Ohio Rules of Professional Conduct, and Rules of Professional Responsibility. Violation of Ohio Rules of Criminal Procedure CRIM R.16, Assistant prosecutor suppression of medical records records that Revealed a disease/virus unknown to the jury And possibley the court in which if Reveabled would have exonerated Eric Walker Along with physical condition documents (That Are in Docket 7 And 9 in which the District Court Refused to Allow As the evidence prove violations of 14th U.S. Constitution Amendments section (1) one Due Process Clause And Equal Protection Clause And Eighth U.S. Constitution Amendment's Cruel And unusual Punishment clause Procedural way of doing something). [Trial counsel's lack of investigation into conceded lack of investigation into medical Evidence, (No D.N.A. samp's of spearm on mattress that As Erica Hasan Alleges (20) twenty Months of being Raped in the same place, And the same bed yet No D.N.A. Evidence to support said crime. Counsel's lying About A private investigator being Assigned by the court (see docket 21 And docket 22 And 28) And being drunk during trial]. While he was aware of the obvious, substantial Risk to safety" Had Actual Knowledge of potential danger And he disregards a Risk of harm. Also with Blood Result evidence see docket 23 And 27 (26 And 28) state violated Eric Walker's Right to cross examine Doctor Bar-shains (state witness) Medical Report (state Exhibit 26-39 Alpha Clinic Records under A Revised code section 2907.02(D) Ruling of the court otherwise would have been entered And a cross examination held on the bases of the virus Hepatitis C And the nucleic Acid Test Multiplex for HIV/HCV which Results were positive, And information proving this disease to be orally And sexually Transmitted through semen and saliva. (As Erica Hasan testimon states Eric Walker would ejaculate inside her virgina All but one time in 20 months

Counsel Thomas Shaughnessy 4510 Buckeye Rd. Cleveland, Ohio 44104, At our first or second pretrial hearing stated he was told by Judge Nancy M. Russo that she would appoint by the court a private investigator to look into the allegations concerning my cases. [Which until now I believe counsel lied on the judge to win my confidence and trust]. He also told me on two seperate occasions that the investigator would visit me at the Cuyahoga County Jail to find out the names of any witnesses, and/or any information solid enough to refute any argument or evidence presented. I never saw nor talk to an investigator and when I questioned counsel about my medical information and condition, my witnesses and other evidence that I've come up with [to include the weather data] over the last few years, and the investigator, his only reply was don't worry I don't think they have a case against you. Furthermore, with due respect to the court, please allow me to mention that I've stated this issue about this investigator and the story counsel told me which in all my memorandums and complaint I feel Mr. Shaughnessy acted alone. I knew of witnesses (that could perjure the testimony of alleged victims) to preserve a meaningful opportunity to present a complete defense with the help of the investigator and counsel, yet in the end of the state's case, counsel told me he lied, there was no court appointed investigator, and out of the same breathe came an detriment to one's rights or claims, a opinion made without adequate basis which was for me to not take the stand. I had only trial counsel's damaged representation in the balance for the jury to consider and I knew they needed to hear my testimony. What could I do a person facing 31 charges, no legal knowledge and very afraid, Thomas Shaughnessy took every opportunity to navigate this decisive or critical moment into destruction for Eric Walker that no reasonable trial counsel would have attempted. In Code of Professional Responsibility Canon 1

Disciplinary Rules DR1-102 Misconduct (A) A lawyer shall not (4) Engage in conduct involving dishonesty, deceit or misrepresentation. (I remember the two people whom I told (because I was excited that I'd have some help to prove my innocence) through visits and telephone conversations that counsel indeed told me about the private investigator were Mildred Walker (316) 883-4327 my mother with who I used counsel's phone right there to tell her, and Cynthia Brown (I don't remember her number but she was my friend and girlfriend until this prison drove us apart). she works for the county of Cuyahoga Dept. of Human Services inwhich they've reorganize to another name but it's the Southgate location. Canvassing the leading authorities it reaso -ed that public defenders owe a duty of undivided loyalty to his client whereby first, if any investigation into my medical records which ha reveal this virus since 1990, 1991, and more recent in August 2001 these are two medical reports that state prior to now with the court order blood test results which did reveal the same virus and the allegations begin in november, 2002 until July 2004, there's no possible way that Erica Hasan and Tatiana would not have had said virus and from 1989 inwhich I had a very serious accident at work for the city of Cleveland while being treated all the way up to my arrest for lower lumbar strain and ruptured disk which has resulted in disabilit over this time frame until 2006. Medical Doctor's reports all available in docket 9 and 9 prove me unable to have inflicted the type of physical punishment stated by Erica Hasan. These reports if investigated were available to the counsel and the information booklet stating the virus's transmission to others There was no medical evidence or physical evidence to prove any element of a crime and the jury would have seen this case in a different light But no investigation proved being or relating to a condition or disease involving danger or death and requiring careful judgment. counsel prejudiced Erica Walker. In the case of the Cleveland Bar Association, they stated

because Appellant counsel never Raised ineffective Assistance of Counsel And they didn't And/or were not going to look into Any Allegations brought forth nor consti -tutional violations for intentional Misconduct by virtue of alleged conspiratorial Action. Thomas Rein knew of this And As he showed in his representation of my Appeal discrimination prohibited by law because counsel had quite a few opportunities to be a effective counsel of law for Eric walker and each time he selected the second of two things Referred to.

## In Conclusion

As a question of Federal Law is within said brief and the notion of fact or in truth lays the denial of Representation and effective Assistance of both trial counsel and appellate counsel as determine by the United States supreme court Accordingly those convictions should be Reversed and vacated, or to grant A writ of Applicability or any other appropriate Relief As provided.

## Certificate of Service

I Eric walker, hereby certify that a copy of this Appellant Brief was sent to Ohio Attorney General Richard Cordray c/o stephanie L watson (0063411) (Counsel For Appellee) 150 East Gay Street, 16th Floor Columbus, Ohio 43315, -3130 by Regular prepaid United States Mail on this 17th day of August 2009.

Eric walker 491-091

ERIC WALKER

WARREN Correctional Institution

P.O. Box 120, 5787 State Route 63

Lebanon Ohio 45036

Appellant Pro. Se

Case: 09-4081     Document: 17     Filed: 09/02/2009     Page: 39

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC WALKER, *Pro Se*, | ) | Case No.: 1:08 CV 1011 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| WANDA JACKSON, WARDEN, | ) | |
| | ) | |
| Respondent | ) | <u>JUDGMENT ENTRY</u> |

The court, having dismissed Walker's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1) in a separate Order on this same date, hereby enters judgment for the Respondent and against the Petitioner.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

June 26, 2009

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 40

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC WALKER, *Pro Se*, | ) | Case No.: 1:08 CV 1011 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| WANDA JACKSON, WARDEN[1], | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

*Pro se* Petitioner Eric Walker ("Petitioner" or "Walker") was convicted and sentenced in the Cuyahoga County Court of Common Pleas after being found guilty, following a jury trial, on 30 counts of offenses against his daughters, including: rape of a child under 13 years of age with firearm specifications; rape with firearm specifications; gross sexual imposition; and kidnapping with firearm specifications. Additionally, Walker was indicted on a 31st count of carrying a weapon while under disability and convicted following a bench trial on that count. The trial court sentenced Walker to a prison term of two life sentences plus 90 years.

---

[1] Subsequent to filing his Petition, Walker was moved to the Warren Correctional Institute, where Wanda Jackson ("Jackson") serves as Warden. As the Magistrate Judge correctly noted in his Report and Recommendation ("R&R"), Jackson is therefore substituted as the proper respondent, pursuant to Federal Rule of Civil Procedure 25, because she is the person with the ability to produce the petitioner's body before the habeas court. (R&R at 1, n.1, citing *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004)).

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 41

After exhausting his state appeals, Walker subsequently filed the pending Petition Under 28 U.S.C. § 2254 (ECF No. 1), which raises ten grounds for review. The case was then referred to Magistrate Judge James S. Gallas ("Magistrate Judge"). The Magistrate Judge issued his Report and Recommendation ("R&R") on February 6, 2009, wherein he recommended that this court dismiss Walker's Petition and notified Walker that he must file any Objections to the R&R by Friday, February 20, 2009. (R&R, ECF No. 17.) Petitioner filed his untimely Objections to the R&R on Monday, February 23, 2009. (ECF No. 19.) Petitioner subsequently filed the following, untimely Motions: (1) Motion to Allow Docket Number Seven and Docket Number Nine, which was filed on March 23, 2009 (ECF No. 20); (2) Motion to Present a Claim of Actual Innocence and a Denial of Effective Assistance of Trial and Appellant Counsel, which was filed on April 22, 2009 (ECF No. 21); (3) Motion to Present Evidence, which was filed on April 22, 2009 (ECF No. 22); and (4) Notice of Motion to Present Evidence, which was filed on June 11, 2009 (ECF No. 23). For the following reasons, the court dismisses Walker's Petition and denies the above-stated Motions as moot.

## I. PETITIONER'S GROUNDS FOR RELIEF

Walker's grounds for habeas relief are set forth below:

(1) **Ground One:** Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(2) **Ground Two:** Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(3) **Ground Three:** Denial of effective assistance of [trial] counsel and right to effective assistance of trial counsel.

(4) **Ground Four:** Conviction obtained by plea of guilty [to being voluntarily classified as a sexual predator] which was unlawfully induced or not made

- 2 -

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 42

voluntarily with understanding of the nature of the charge and the consequences of the plea.

(5) **Ground Five:** Denial of effective assistance of [trial] counsel.

(6) **Ground Six:** Denial of effective assistance of [trial] counsel.

(7) **Ground Seven:** Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(8) **Ground Eight:** Denial of effective assistance of [trial] counsel.

(9) **Ground Nine:** Denial of effective assistance of [trial] counsel.

(10) **Ground Ten:** Denial of effective assistance of [trial] counsel.

(R&R at 1, n.2, citing Pet. at 5-25.)

## II. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Magistrate Judge issued his R&R, which concluded that Walker's untimely appeal to the Ohio Supreme Court resulted in a procedural default of his claims, and he failed to show cause and prejudice to excuse his procedural default. (R&R at 5-9.) As the Supreme Court recognized in *House v. Bell,* 547 U.S. 518, 537 (2006), "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" (Citation omitted). The Magistrate Judge found that Walker failed to produce new evidence to support his actual innocence claim. (R&R at 10-11) (citations omitted.) Accordingly, the Magistrate Judge recommended that the court dismiss Walker's Petition.

Case: 09-4081   Document: 17   Filed: 09/02/2009   Page: 43

### III. PETITIONER'S OBJECTIONS

Walker filed his untimely Objections to the R&R on February 23, 2009. Walker's Objections merely reiterate the arguments asserted in his Petition and fail to adequately address the Magistrate Judge's conclusions that Walker's claims were procedurally defaulted and that he failed to demonstrate cause and prejudice or a colorable actual innocence claim.

### IV. FINDINGS

As noted above, Petitioner's Objections merely reiterate the same arguments that he previously made in his Petition. Upon careful *de novo* review of the Magistrate Judge's R&R and all other relevant documents in the record, this court finds that the Magistrate Judge's conclusions are fully supported by the record and controlling case law. Accordingly, for the reasons stated by the Magistrate Judge, the court adopts as its own the Magistrate Judge's R&R.

### V. CONCLUSION

The court hereby dismisses Walker's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (ECF No. 1). Therefore, the court denies as moot: (1) Walker's Motion to Allow Docket Number Seven and Docket Number Nine (ECF No. 20); (2) Walker's Motion to Present a Claim of Actual Innocence and a Denial of Effective Assistance of Trial and Appellant Counsel (ECF No. 21); (3) Walker's Motion to Present Evidence (ECF No. 22); and (4) Walker's Notice of Motion to

Present Evidence (ECF No. 23). The court further certifies that, pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

June 26, 2009

- 5 -




UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004242000    $ 02.07
AUG 20 2009
MAILED FROM ZIP CODE 45036

LEONARD GREEN CLERK.

United States Court Of Appeals
For the sixth circuit
100 EAST Fifth Street, Room 538
Potter Stewart U.S. Courthouse
Cincinnati Ohio 45202-3988